## ASPEN AMERICAN INSURANCE COMPANY

**Aspen**

| Administrative Offices | Statutory Home Office |
|---|---|
| Newport Office Center III | 350 North St. Paul Street |
| 499 Washington Boulevard, 8th Floor | Dallas, TX 75201 |
| Jersey City, NJ 07310 | |

### THIS IS A CLAIMS MADE INSURANCE POLICY.

THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD, OR ANY EXTENDED REPORTING PERIOD. COVERAGE UNDER THE POLICY CEASES UPON TERMINATION OF THE POLICY, EXCEPT FOR AUTOMATIC EXTENDED REPORTING PERIOD, UNLESS THE INSURED PURCHASES OPTIONAL EXTENDED REPORTING PERIOD. CLAIM EXPENSES ARE WITHIN AND REDUCE THE LIMIT OF LIABILITY. THE POLICY PROVIDES NO COVERAGE FOR CLAIMS ARISING OUT OF ACTS OR OMISSIONS IN THE PERFORMANCE OF PROFESSIONAL SERVICES WHICH TOOK PLACE PRIOR TO THE RETROACTIVE DATE. THE POLICY PROVIDES FOR AUTOMATIC EXTENDED REPORTING PERIOD OF SIXTY (60) DAYS AND OPTIONAL EXTENDED REPORTING PERIOD OF UP TO SEVEN (7) YEARS. COVERAGE GAPS MAY ARISE AT THE EXPIRATION OF THE POLICY, AUTOMATIC EXTENDED REPORTING PERIOD OR OPTIONAL EXTENDED REPORTING PERIOD. DURING THE FIRST SEVERAL YEARS OF THE CLAIMS MADE RELATIONSHIP, CLAIMS MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF THE OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS MADE RELATIONSHIP REACHES MATURITY.

## LAWYERS PROFESSIONAL LIABILITY POLICY DECLARATIONS

**COMPANY:  ASPEN AMERICAN INSURANCE COMPANY**

**POLICY NUMBER:**  LPP003671-04          **RENEWAL OF:**  LPP003671-03

**PRODUCER  NAME & ADDRESS**:

> B&B Protector Plans, Inc.
> d/b/a The Lawyer's Protector Plan
> 655 North Franklin Street
> Suite 1900
> Tampa, FL  33602

**1.   NAMED INSURED**:

> The Law Office of David P. Marcus, PLLC

**2.   ADDRESS**:

> 8416 Main Street
> Williamsville, NY  14221

**3.   POLICY PERIOD:**       **EFFECTIVE DATE:**  05/20/2022       **EXPIRATION DATE:**  05/20/2023

> 12:01 A.M. Standard Time at the address of the **Named Insured** as stated in Item 1. above.

4. **LIMITS OF LIABILITY**  (Inclusive of **claim expenses** ☐, or; Exclusive of **claim expenses** ☒):

    A.   $2,000,000    Limit of Liability - Each **Claim**

    B.   $2,000,000    Limit of Liability - Policy Aggregate

5. **DEDUCTIBLE** (Inclusive of **claim expenses** ☐, or; Exclusive of **claim expenses** ☒):

    A.   $20,000    Each **Claim**

    B.   $N/A    Aggregate

6. **PREMIUM**:                        $2,419.00

    **TAXES and/or SURCHARGES**:    $0.00

    **TOTAL**:                      $2,419.00

7. **NOTICES TO BE SENT TO**:

| **Report a Claim in Writing:** | **All Other Notices:** |
|---|---|
| Claims Department | Lawyer's Protector Plan |
| Lawyer's Protector Plan | 655 North Franklin Street |
| 655 North Franklin Street | Suite 1900 |
| Suite 1900 | Tampa, FL 33602 |
| Tampa, FL 33602 | 800-282-6955 |
| Fax 888-239-2663 | Fax 813-223-9547 |
| | |
| Email: lppclaims@bbprograms.com | Email: lpp@bbprograms.com |

    **For claims related questions, please call**:

    813-222-4291

    Toll Free:  800-336-5529 ext. 14291

8. **RETROACTIVE DATE** (if applicable):   05/20/2008

9. **FORMS AND ENDORSEMENTS ATTACHED AT POLICY EFFECTIVE DATE:**

    ASP LPP 062 NY DEC (05 14) Lawyers Professional Liability Declarations

    ASP CO 098 (02 13) AAIC Signature Page

    ASP LPP 063 NY (06 14) Lawyers Professional Liability Policy

    ASP LPP 064 (11 13) OFAC Endorsement

    ASP LPP 135 NY (05 14) New York Policyholder Disclosure

    ASP LPP 136 NY (06 14) New York Claim Expenses Outside The Limit of Liability Endorsement

    ASP LPP 026 NY (05 14) New York - First Dollar Defense Endorsement - Each Claim

    ASP LPP 039 (11 13) Predecessor Firm Endorsement

**10. EXTENDED REPORTING PERIOD:**

    A.  One (1) Year Period (95% of the annual premium):    $2,298.00

    B.  Three (3) Year Period (185% of the annual premium):    $4,475.00

    C.  Five (5) Year Period (225% of the annual premium):    $5,443.00

    D.  Seven (7) Year Period (250% of the annual premium):    $6,048.00

By acceptance of this policy, the **Insured** agrees that the statements in the Declarations, the Application and any attachments hereto are the **Insured's** agreements and representations and that this policy embodies all agreements existing between the **Insured** and the **Company** or any of its Authorized Representatives relating to this insurance.



Aspen American Insurance Company

## SIGNATURE PAGE

IN WITNESS WHEREOF, the **Company** has caused this Policy to be signed by its President and Secretary and countersigned where required by law on the Declarations page by its duly Authorized Representative.

_____                    _____
             Secretary                                        President

**ASPEN AMERICAN INSURANCE COMPANY**

**THIS IS A CLAIMS MADE POLICY.  THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR CLAIMS WHICH ARE FIRST MADE DURING THE POLICY PERIOD, OR ANY EXTENDED REPORTING PERIOD.  COVERAGE UNDER THE POLICY CEASES UPON TERMINATION OF THE POLICY, EXCEPT FOR AUTOMATIC EXTENDED REPORTING COVERAGE, UNLESS THE INSURED PURCHASES OPTIONAL EXTENDED REPORTING COVERAGE.**

**THIS POLICY MAY PROVIDE THAT CLAIM EXPENSES, INCLUDING LEGAL DEFENSE, ARE WITHIN AND REDUCE THE LIMIT OF LIABILITY.  THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES MAY BE REDUCED BY UP TO 50% BY CLAIM EXPENSES FOR POLICIES WITH A LIMIT OF LIABILITY – EACH CLAIM OF $500,000 OR GREATER.  THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES MAY BE EXHAUSTED BY CLAIM EXPENSES FOR POLICIES WITH A LIMIT OF LIABILITY – EACH CLAIM OF $5,000,000 OR GREATER OR A DEDUCTIBLE OF $100,000 OR GREATER.   FURTHER NOTE THAT CLAIM EXPENSES SHALL BE APPLIED AGAINST THE DEDUCTIBLE BY UP TO FIFTY PERCENT (50%) OF THE DEDUCTIBLE AMOUNT FOR POLICIES WITH A LIMIT OF LIABILITY – EACH CLAIM OF $500,000 OR GREATER.  CLAIM EXPENSES SHALL BE APPLIED AGAINST THE DEDUCTIBLE BY UP TO ONE HUNDRED PERCENT (100%) OF THE DEDUCTIBLE AMOUNT FOR POLICIES WITH A LIMIT OF LIABILITY – EACH CLAIM OF $5,000,000 OR GREATER OR A DEDUCTIBLE OF $100,000 OR GREATER.**

**THE POLICY PROVIDES NO COVERAGE FOR CLAIMS ARISING OUT OF ACTS OR OMISSIONS IN THE PERFORMANCE OF PROFESSIONAL SERVICES WHICH TOOK PLACE PRIOR TO THE RETROACTIVE DATE.**

**THE POLICY PROVIDES FOR AUTOMATIC EXTENDED REPORTING PERIOD COVERAGE OF 60 DAYS AND OPTIONAL EXTENDED REPORTING PERIOD COVERAGE.  COVERAGE GAPS MAY ARISE AT THE EXPIRATION OF THE POLICY; AUTOMATIC EXTENDED REPORTING PERIOD OR OPTIONAL EXTENDED REPORTING PERIOD.  DURING THE FIRST SEVERAL YEARS OF THE CLAIMS MADE RELATIONSHIP, CLAIMS MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF THE OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS MADE RELATIONSHIP REACHES MATURITY.**

**THE RETROACTIVE DATE MAY NOT BE CHANGED DURING THE TERM OF THE CLAIMS MADE RELATIONSHIP AND ANY EXTENDED REPORTING PERIOD.**

**PLEASE READ THE ENTIRE POLICY CAREFULLY.**

**LAWYERS PROFESSIONAL LIABILITY POLICY**

Words and phrases that appear in **bold** print have special meanings that are defined in Section **III. DEFINITIONS**.

**I.  INSURING AGREEMENTS**

   **A. Coverage**

   The **Company** will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** and **claim expenses** as a result of a **claim** first made against the **Insured** during the **policy period** or the **extended reporting period** (if applicable), by reason of an act or omission, including **personal injury**, in the performance of **professional services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:

   1.  No **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim** prior to:

    **a.** The inception date of the first policy issued and continuously renewed by the **Company**; or

    **b.** The date the **Insured** first became a member or employee of the **Named Insured** or **predecessor firm**, whichever is later.

  **2.** Neither the act or omission nor any **related act or omission** occurred prior to the **retroactive date**, if applicable.

### B. Defense

The **Company** shall have the right and duty to defend, in the **Insured's** name and on the **Insured's** behalf, a **claim** covered by this policy even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Company** shall have the right to appoint counsel and to make such investigation and defense of a **claim** as is deemed necessary by the **Company**. If a **claim** shall be subject to arbitration or mediation, the **Company** shall be entitled to exercise all of the **Insured's** rights in the choice of arbitrators or mediators and in the conduct of an arbitration or mediation proceeding.

### C. Settlement

The **Company** shall not settle any **claim** without the consent of the **Named Insured** which consent shall not be unreasonably withheld. If, however, the **Named Insured** refuses to consent to a settlement recommended by the **Company** that is acceptable to the claimant, the **Company's** liability for the **claim** shall not exceed the amount for which the **claim** could have been settled, plus **claim expenses** incurred up to the date of such refusal or the applicable limit of liability, whichever is less.

### D. Exhaustion of Limits

The **Company** is not obligated to pay any **damages** or **claim expenses** or to defend or continue to defend any **claim** after the applicable limit of liability has been exhausted, or after the **Company** has deposited the remaining limit of liability into a court of competent jurisdiction or tendered the remaining limit of liability to the **Named Insured** or, if applicable, to the excess insurer(s) of the **Named Insured**. The **Company** will cooperate in the transfer of control of the defense of any **claim** to the **Named Insured** which were reported to the **Company** prior to the exhaustion of such limit. The **Named Insured** must cooperate in the transfer of control for the defense of such **claims**. The **Named Insured** must reimburse the **Company** for expenses it incurs in taking those steps the **Company** deems appropriate to avoid a default in such **claims** until such transfer has been completed.

## II.  LIMITS OF LIABILITY AND DEDUCTIBLE

### A.  Limit of Liability - Each Claim

Subject to Subsection B. below, the **Company's** limit of liability for **damages** and **claim expenses** for each **claim** first made against the **Insured** during the **policy period** shall not exceed the amount shown in Item 4.A. in the Declarations for "Each **Claim**."

The **Company's** limit of liability for each **claim** may be reduced by up to fifty percent (50%) by the payment of **claim expenses** if the limit of liability shown in Item 4.A. of the Declaration for "Each **Claim**" is at least $500,000. If the **Company's** limit of liability, for each **claim**, is reduced by fifty percent (50%) by the payment of **claim expenses**, any additional **claim expenses** paid by the **Company** shall not further reduce the limit of liability for each **claim**.

### B.  Limit of Liability - Policy Aggregate

The **Company's** limit of liability for **damages** and **claim expenses** for all **claims** first made against the **Insured** during the **policy period** shall not exceed the aggregate amount shown in Item 4.B. in the Declarations as the "Policy Aggregate."

The **Company's** limit of liability for all **claims** may be reduced by up to fifty percent (50%) by the payment of **claim expenses** if the limit of liability shown in Item 4.B. of the Declaration for the "Policy Aggregate" is at least $500,000. If the **Company's** limit of liability, for all **claims**, is reduced by fifty percent (50%) by the payment of **claim expenses**, any additional **claim expenses** paid by the **Company** shall not further reduce the limit of liability for all **claims**.

**C. Deductible**

1. The deductible amount shown in Item 5. of the Declarations is the **Insured's** obligation for each **claim** and applies to the payment of **damages** and **claim expenses**. The deductible will be paid by the **Named Insured**, or upon the **Named Insured's** failure to pay, jointly and severally by all **Insureds**, within thirty (30) days of the **Company's** demand for payment. The limits of liability set forth in the Declarations are in addition to, and in excess of, the deductible.

   **Claim expenses** charged against the deductible amount stated in Item 5. of the Declarations for "Each **Claim**" may equal up to fifty percent (50%) of the deductible amount if the limit of liability shown in Item 4.A. of the Declarations for "Each **Claim**" is at least $500,000.

2. If within one (1) year following the date a **claim** is first made, the **claim** is resolved by agreement, with the consent of the **Named Insured** and the **Company**, as reflected in a signed settlement agreement, the **Named Insured** will be reimbursed or credited fifty percent (50%) of the deductible, but not to exceed a reimbursement or credit of $10,000 per **claim** and $25,000 per **policy period** for all such **claims** resolved or concluded in accordance with this Subsection.

**D. Multiple Insureds, Claims and Claimants**

The limits of liability shown in Item 4. of the Declarations is the maximum amount the **Company** will pay under this policy for **damages** and **claim expenses** regardless of the number of **Insureds**, **claims** made or claimants. All **related claims** made against any **Insured** shall be considered a single **claim**, first made when the earliest of the **related claims** was first made provided, however, nothing in this Subsection shall alter the **Insured's** obligation to give written notice of any **claim** made against the **Insured** as soon as reasonably practicable.

**E. Supplementary Payments**

Supplementary payments are not subject to the deductible and are in addition to the limits of liability.

1. **Defense of Disciplinary Actions**

   The **Company** will pay on behalf of the **Insured** for all legal defense fees and expenses incurred in the defense of any **disciplinary action** brought against the **Insured** during the **policy period** or an **extended reporting period** (if applicable). The **Company's** maximum liability in this regard for all legal defense fees and expenses incurred by the **Insured** in the defense of any **disciplinary action** shall be $30,000 per **disciplinary action** and $60,000 per **policy period**, regardless of the number of **Insureds** or number of **disciplinary actions**. This coverage shall not apply to **claims** involving non-employment related benefits, provided either directly or indirectly, from any government, governmental agency or political subdivision pursuant to any entitlement program. This policy does not provide for the indemnification of any penalty or similar monetary amount that the **Insured** may become obligated for as a result of such proceeding.

2. **Reimbursement for Security Incident Response Expenses**

   The **Company** will reimburse the **Named Insured** for any **security incident** response expenses up to a maximum of $10,000 per **security incident** and $25,000 per **policy period**. **Security incident** response expenses are any expenses incurred by the **Insured** to: 1) hire cyber forensic analysts to determine the extent of an actual security breach that has occurred; or 2) comply with state or local privacy laws requiring that notification and credit monitoring

services are to be provided to individuals when the security, confidentiality or integrity of their personal information has been compromised.

**3. Other Payments**

The **Company** will reimburse the **Insured** for actual loss of earnings and reasonable expenses incurred at the **Company's** request for attendance at trial or a hearing, arbitration or mediation in connection with a **claim** reported under this policy. The **Company's** obligation to reimburse the **Insured** under this provision shall be subject to a maximum amount of $500 per day, $10,000 per **claim** and $30,000 per **policy period**, regardless of the number of trials, hearings, mediations, or arbitration proceedings or the number of **Insureds**.

## III. DEFINITIONS

**A. Bodily injury** means physical injury, sickness or disease sustained by any person including death resulting from any of these at any time; or mental illness, mental anguish or emotional distress, pain and suffering, or shock sustained by that person whether or not resulting from injury to the body, sickness, disease, or death of any person.

**B. Claim** means a demand for money or services, naming the **Insured**, arising out of an act or omission in the performance of **professional services**. A **claim** also includes the service of suit, a request that an **Insured** waive a legal right or sign an agreement to toll a statute of limitations, or the institution of an arbitration proceeding against the **Insured**.

**C. Claim expenses** means:

    **1.** Fees charged by attorneys designated by the **Company** or designated by the **Insured** with the **Company's** prior written consent;

    **2.** All other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, negotiation, arbitration, mediation, defense, or appeal of a **claim** if incurred by the **Company** or by the **Insured** with the **Company's** prior written consent; and

    **3.** Premiums on appeal bonds, attachment bonds or similar bonds; provided, however, that the **Company** is not obligated to apply for or furnish any such bond.

**Claim expenses** do not include fees, costs or expenses of employees or officers of the **Company**, or salaries, loss of earnings or other remuneration by or to any **Insured**.

**D. Company** means the insurance company named in the Declarations.

**E. Damages** means any compensatory sum and includes a judgment, award or settlement, provided any settlement is negotiated with the **Company's** written consent.

**Damages** do not include:

    **1.** The return, reduction or restitution of fees, expenses or costs for **professional services** performed, or to be performed, by the **Insured** and injuries that are a consequence of the foregoing;

    **2.** Fines, penalties, forfeitures, or sanctions;

    **3.** The multiplied portion of any multiplied awards;

    **4.** Injunctive or declaratory relief; or

    **5.** Punitive or exemplary damages.

**F. Disciplinary action** means an action, inquiry or investigation brought against the **Insured** by a bar association, licensing board, disciplinary board, peer review committee, or similar entity alleging professional misconduct or violation of the Code of Professional Responsibility; provided that such proceeding arises from an act or omission described in Section I.A. herein.

**G. Extended reporting period** means the period of time after the end of the **policy period** for reporting **claims** to the **Company** that are first made against the **Insured** during the applicable

**extended reporting period** by reason of an act or omission, which was committed prior to the end of the **policy period** and on or subsequent to the **retroactive date**, and is otherwise covered by this policy.

**H. Insured** means:

1. The **Named Insured**;

2. Any **predecessor firm**;

3. Any past, present or future partner, incorporated partner, officer, director, stockholder, member, manager, associate, independent contractor, professional corporation, employee, or "of counsel" of the **Named Insured**, but only with respect to **professional services** performed on behalf of the **Named Insured** or any **predecessor firm**, provided further that if such person has ceased to be employed or affiliated with the **Named Insured** or any **predecessor firm**, such person shall continue to be an **Insured** hereunder with respect to **professional services** performed on behalf of the **Named Insured** during such employment or affiliation;

4. Any **Insured's** spouse, but only with respect to any **claim** resulting from **professional services** performed on behalf of the **Named Insured** or any **predecessor firm**; or

5. The estate, heirs, executors, administrators, and legal representatives of any **Insured** in the event of the **Insured's** death, incapacity or bankruptcy, but only with respect to **professional services** performed on behalf of the **Named Insured** prior to such **Insured's** death, incapacity or bankruptcy.

**I. Named Insured** means the persons or entities specified in Item 1. of the Declarations or specifically designated by endorsement.

**J. Personal injury** means:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. a. Oral or written publication, in any manner, including electronic form, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    b. Oral or written publication, in any manner, including electronic form, of material that violates a person's right of privacy;

    Except oral or written publication, in any manner, which arises out of advertising, broadcasting or telecasting activities conducted by, or on behalf of, the **Insured**.

**K. Policy period** means the period of time from the effective date shown in Item 3. of the Declarations to the earliest of the date of termination, expiration or cancellation of this policy.

**L. Property damage** means:

1. Physical injury to tangible property including all resulting loss of use of that property; or

2. Loss of use of tangible property that is not physically injured.

**M. Predecessor firm** means any partnership, professional association, limited liability partnership, limited liability corporation, or corporation, which has undergone dissolution, and:

1. The **Named Insured** is the majority successor in interest to the financial assets and liabilities; and

    2. At least fifty-one percent (51%) of the lawyers in such firm became an owner, partner, officer, director, stockholder-employee, or other lawyer-employee of the **Named Insured**.

**N. Professional services** means services performed by the **Insured**:

    1. For a client in the **Insured's** capacity as a lawyer in good standing, mediator, arbitrator, notary public, lobbyist, or hearing officer;

    2. As an administrator, conservator, executor, guardian, trustee, receiver, or in any similar fiduciary capacity; or as a title agent or legal expert provided that such services are performed in connection with, and incidental to, the **Insured's** practice of law; provided, however, that no coverage shall apply to any **claim** made against the **Insured** as a beneficiary or distributee of any trust or estate;

    3. As a member of a bar association or other legal or lawyer-related ethics, peer review, accreditation, licensing or similar board, committee, or organization;

    4. As an author, but only for the publication or presentation of legal research papers or similar work and only if the fees generated annually from all such work are less than $25,000; and

    5. On a pro bono basis performed with the knowledge and consent of the **Named Insured**.

**O. Related acts or omissions** means all acts or omissions in the rendering of **professional services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice, or decision.

**P. Related claims** mean all **claims** arising out of a single act or omission or arising out of **related acts or omissions**.

**Q. Retroactive date** means the date shown in Item 8. of the Declarations, on or after which any act or omission must have occurred for coverage to apply.

**R. Security incident** means the unauthorized access of, or use of, data containing private or confidential information in connection with the performance of **professional services** which results in the violation of any Privacy Regulation.

## IV. EXCLUSIONS

The **Company** will not defend or pay any **claim**:

**A.** Based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal, or malicious act or omission by the **Insured**;

This exclusion shall not apply to those **Insureds** who did not personally participate or personally acquiesce in or remain passive after having knowledge of such conduct. Each **Insured** must promptly comply with all provisions of this policy upon learning of any concealment;

**B.** Based on or arising out of **bodily injury** or **property damage**;

**C.** Based on or arising out of discrimination, humiliation, harassment, or misconduct including, but not limited to, **claims** based on allegations relating to an individual's race, creed, color, age, gender, national origin, religion, disability, marital status, or sexual preference;

**D.** Based on or arising out of the **Insured's** capacity as an officer, director, partner, manager, trustee, or employee of any company, corporation, operation, organization, or association other than the **Named Insured** or any **predecessor firm**; provided, however, that this exclusion does not apply to services performed as a trustee where such services are performed in connection with, and incidental to, the **Insured's** practice of law;

**E.** Based on or arising out of **professional services** performed for or by any business enterprise not named in Item 1. of the Declarations if, on or after the date or time of the act or omission giving rise to such **claim**:

    1. Any **Insured** controlled, owned, operated, or managed or intended to control, own, operate, or manage such entity; or

2.  Any **Insured** was, or intended to become, an owner, partner, member, director, officer, or employee of such entity.

Control of or ownership in a business enterprise is established if the **Insured**, or the **Insured's** spouse, own or hold, individually or collectively, directly or indirectly, 20% or more of the equity and/or debt instruments of such enterprise;

F.  By or on behalf of the **Insured** against any other **Insured** unless such **claim** arises out of **professional services** performed by such other **Insured** in an attorney/client relationship with the **Insured** making the **claim**;

G.  Based on or arising out of the alleged certification or acknowledgment by the **Insured**, in his or her capacity as a notary public, of a signature on a document that the **Insured** did not witness being placed on the document;

H.  Based on or arising out of liability assumed by any **Insured** under any contract or agreement, unless such liability would have attached to the **Insured** even in the absence of such contract or agreement;

I.  Based on or arising out of the loss or destruction of or diminution in the value of any asset in the **Insured's** care, custody or control, or out of the misappropriation of, or failure to give an account of, any asset in the **Insured's** care custody or control, including the commingling of funds;

J.  Based on or arising out of investment or financial advice or any product referrals even where such services are performed in connection with and are incidental to the **Insured's** practice of law.

## V.  CONDITIONS

### A.  Reporting of Claims and Potential Claims

1.  The **Insured**, as a condition precedent to the obligations of the **Company** under this policy, will give written notice of any **claim** made against the **Insured** as soon as reasonably practicable.

Failure to give any notice required by this policy within the time prescribed shall not invalidate any **claim** made by the **Insured** or by any claimant if it shall be shown that it was not reasonably possible to give such notice within the time prescribed and that notice was given as soon as was reasonably possible.

Failure to give any notice required to be given within the time prescribed shall not invalidate any **claim** made by the **Insured** or any other claimant, unless the failure to provide timely notice has prejudiced the **Company**, provided that the notice shall have been made during the **policy period** or any applicable **extended reporting period**.

2.  If during the **policy period**, any **Insured** becomes aware of any act or omission which may reasonably be expected to be the basis of a **claim** against any **Insured**, including but not limited to any notice, advice or threat, whether written or verbal, that any person or entity intends to hold the **Insured** responsible for any alleged act or omission and gives written notice to the **Company** with all full particulars, including:

    a.  The specific act or omission;

    b.  The dates and persons involved;

    c.  The identity of anticipated or possible claimants;

    d.  The circumstances by which the **Insured** first became aware of the potential **claim**; and

    e.  Potential damages or injury;

Then any **claim** that is subsequently made against the **Insured** arising out of such act or omission will be deemed to have been made on the date such written notice was received by the **Company**.

The **Insured** shall give all written notices to the **Company** under this Condition V.A.1. and V.A.2. as specified in Item 7. of the Declarations. Notices pursuant to Conditions V.A.1. and V.A.2. given to a licensed agent of the **Company**, in this state, shall be deemed notice to the **Company**. If notices are mailed or e-mailed, the date of mailing or e-mailing of such notice will constitute the date such notice was given and proof of mailing or e-mailing to the stated address shall be sufficient proof of notice.

**B. Assistance and Cooperation**

1. The **Insured** will cooperate with the **Company** in the defense, investigation and settlement of any **claim**. Upon the **Company's** request, the **Insured** will attend a trial or a hearing, arbitration, or mediation and assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits and proceedings in connection with a **claim**.

2. The **Insured** will assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **claim**.

3. The **Insured** will not, except at the **Insured's** own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the prior written consent of the **Company**. The **Company** shall have no obligation to pay or reimburse any person or entity for sums expended to defend any **claim** otherwise covered under this policy prior to written notice of such **claim** being received by the **Company**.

**C. Action Against the Company**

1. No action may be brought against the **Company**:

   a. Unless, as a condition precedent thereto, the **Insured** has fully complied with all the terms and provisions of this policy; and

   b. Until the amount of the **Insured's** obligation to pay has been determined either by judgment against the **Insured** or by written agreement of the **Insured**, the claimant and the **Company**.

2. Nothing contained in this policy will give any person or organization the right to join the **Company** as a defendant, co-defendant or other party in any action against the **Insured** to determine the **Insured's** liability.

3. With respect to **claims**, if the **Company** denies coverage or does not admit liability because an **Insured** or the injured person, or someone acting for the injured person or other claimant fails to give the **Company** written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against the **Company**, provided the sole question is whether the denial of coverage or non-admission of liability is based on the failure to provide timely notice.

   However, the injured person, someone acting for the injured person or other claimant may not bring an action if within sixty (60) days after the **Company** denies coverage or does not admit liability, the **Company** or an **Insured**:

   a. Brings an action to declare the rights of the parties under the policy; and

   b. Names the injured person, someone acting for the injured person or other claimant as a party to the action.

**D. Bankruptcy**

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not relieve the **Company** of any of its obligations hereunder.

**E. Other Insurance**

The insurance provided for in this policy shall be excess over all other valid and collectible insurance, whether such insurance is stated to be primary, contributory, excess, umbrella, contingent, or otherwise. This does not apply to insurance that is purchased by the **Named Insured** specifically to apply in excess of this insurance.

**F. Subrogation**

In the event of any payment under this policy, the **Company** shall be subrogated to all the **Insured's** rights of recovery thereof against any person or organization, including any rights such **Insured** may have against any other **Insured** who personally participated or personally acquiesced in or remained passive after having knowledge of any dishonest, intentionally wrongful, fraudulent, criminal, or malicious act or omission. The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure and collect upon such rights. The **Insured** shall do nothing to prejudice such rights.

**G. Changes**

Notice to any agent of the **Company** or knowledge possessed by any such agent or by any other person will not affect a waiver or a change in any part of this policy, and will not prevent or preclude the **Company** from asserting or invoking any right or provision of this policy. None of the provisions of this policy will be waived, changed or modified except by a written endorsement issued by the **Company** to form a part of this policy.

**H. Mergers, Acquisitions, Dissolutions, and Other Material Changes**

The **Named Insured** must report to the **Company** any changes during the **policy period** which affect fifty percent (50%) or more of the lawyers insured at the inception of this policy. This notice must be provided in writing within sixty (60) days of such change. In the event of a merger, dissolution or acquisition, the **Named Insured** must use its best efforts to notify the **Company** at least thirty (30) days prior to the projected date of such change. In each case, the **Company** will have the right to accept, alter or decline coverage and to charge an additional premium.

**I. Cancellation/Nonrenewal**

1. This policy may be cancelled by the **Named Insured** by returning it to the **Company**. The **Named Insured** may also cancel this policy by giving written notice to the **Company** stating at what future date cancellation is to be effective.

2. During the first sixty (60) days this policy is in effect, the **Company** may cancel this policy by sending written notice to the **Named Insured** at the address shown in Item 2. of the Declarations and to the **Named Insured's** authorized agent or broker. The **Company** will provide such written notice at least ten (10) days before such cancellation is to be effective if the cancellation is for any reason included in Paragraph 3. below, or twenty (20) days before such cancellation is to be effective if such cancellation is for any reason not included in Paragraph 3. below.

3. After this policy has been in effect for sixty (60) days or more, or if this policy is a renewal or continuation of a policy issued by the Company, the **Company** may cancel this policy by mailing to the **Named Insured** at the address shown in Item 2. of the Declarations and to the **Named Insured's** authorized agent or broker written notice stating when, not less than fifteen (15) days thereafter, such cancellation will be effective. Cancellation by the **Company** shall be limited to the following reasons:

   a. Non-payment of premium;

   b. Failure of the **Named Insured** to comply with the terms or conditions of this policy in a manner that substantially increases the hazard insured against;

   c. Revocation or suspension of an **Insured's** license to offer the **professional services**; or

   d. Discovery of fraud or material misrepresentation in obtaining this policy or in the presentation of a **claim**.

4.  The time of surrender of the policy or the effective date and hour of cancellation stated in the notice will become the end of the **policy period**.  Delivery of such written notice either by the **Named Insured** or by the **Company** will be equivalent to mailing.

5.  If the **Company** or **Named Insured** cancels this policy, the earned premium will be computed on a pro rata basis.  Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

6.  The offering of terms and conditions different from the expiring terms and conditions, including limits of liability, deductible or premium, shall not constitute a refusal to renew.

7.  If the **Company** elects not to renew this policy, the **Company** shall send notice as provided in Paragraph 9. below.

8.  If the **Company** conditions the renewal of this policy upon:

    a.  Change in limits;

    b.  Change in type of coverage;

    c.  Reduction of coverage;

    d.  Increased deductible or self-insured retention;

    e.  Addition of an exclusion;

    f.  Increased premiums in excess of ten percent (10%), exclusive of any premium increase due to and commensurate with added or increased exposure; or as a result of experience rating, loss rating, retrospective rating, or audit.

    The Company shall send notice as provided in Paragraph 9. below.

9.  If the **Company** decides not to renew this policy or conditionally renew this policy as provided in Paragraphs 7. and 8., the **Company** shall mail or deliver written notice to the **Named Insured** at least sixty (60) days, but not more than one hundred twenty (120) days before:

    a.  The expiration date of the policy; or

    b.  The anniversary date if this is a continuous policy.

    Notice will be mailed or delivered to the **Named Insured** at the address shown in the Declarations and its authorized agent or broker.  If notice is mailed, proof of mailing will be sufficient proof of notice.

    Notice will include the specific reason or reasons for non-renewal or conditional renewal.

    The **Company** will not send the **Named Insured** notice of non-renewal or conditional renewal if the **Named Insured** or its authorized agent or broker or another insurer of the **Named Insured** mails or delivers notice that this policy is replaced or no longer desired.

10. If the **Company** violates any of the provisions of Paragraphs 7., 8. or 9., by sending the **Named Insured** an incomplete or late notice of non-renewal or conditional renewal:

    a.  Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until sixty (60) days after such notice is mailed or delivered, unless the **Named Insured**, during this sixty (60) day period, has replaced the coverage or elects to cancel.

    b.  On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another **policy period**, at the lower of the current rates or the prior period's rates, unless the **Named Insured**, during the additional **policy period**, has replaced the coverage or elects to cancel.

The limits of liability of this policy shown in the Declarations will be increased in proportion to any policy extension provided by this Paragraph 10.

**J. Territory**

This policy applies to an act or omission taking place anywhere in the world provided that any **claim** is made or suit is brought against the **Insured** within the United States of America, its territories or possessions, Puerto Rico, or Canada.

**K. Named Insured Sole Agent**

The **Named Insured** will be the sole agent and will act on behalf of all **Insureds** for the purpose of giving or receiving any notices, any amendments to or cancellation of this policy, for the completing of any applications and the making of any statements, representations and warranties, for the payment of any premium and the receipt of any return premium that may become due under this policy and the exercising or declining to exercise any right under this policy including the purchase of an **extended reporting period** under Section VI. of this policy.

**L. Entire Contract**

By acceptance of this policy the **Insured** attests that:

1. All of the information and statements provided to the **Company** by the **Insured**, including but not limited to, the application and any supplemental information, are true, accurate and complete and will be deemed to constitute material representations made by the **Insured**;

2. This policy is issued in reliance upon the **Insured's** representations;

3. This policy, endorsements, thereto, together with the completed and signed application, and any and all supplementary information and statements provided by the **Insured** to the **Company**, embody all of the agreements existing between the **Insured** and the **Company** and shall constitute the entire contract between the **Insured** and the **Company**; and

4. Any material misrepresentation or concealment by the **Insured**, or the **Insured's** agent, will render the policy null and void and relieve the **Company** from all liability herein.

**M. Notices**

Other than reporting a **claim**, all other notices required to be given by the **Insured** will be submitted in writing to the **Company**, its authorized representative at the address specified in Item 7. in the Declarations or its authorized insurance agent.  If mailed, the date of mailing of such notice will be deemed to be the date such notice was given and proof of mailing will be sufficient proof of notice.

**N. Assignment**

No assignment of interest of the **Insured** under this policy is valid, unless the **Company's** written consent is endorsed hereon.

**O. Liberalization**

If the **Company** obtains approval for any amended state filing that would broaden coverage under this policy form ASP LPP 063 NY, here without additional premium, at any time during the current **policy period**, the broadened coverage will immediately apply to this policy, except that it will not apply to **claims** that were first made against the **Insured** prior to the effective date of such revision.

**P. Action Against the Company for Denial Based on Failure to Provide Timely Notice**

With respect to **Claims**, if the **Company** denies coverage or does not admit liability because the **Insured** fails to give the **Company** written notice as soon as practicable, then the person who has submitted a **Claim** against the **Insured** may bring an action against the **Company**, provided the sole question is whether the denial of coverage or non-admission of liability is based on the failure to provide timely notice.

However, the person who has submitted a **Claim** against the **Insured** may not bring an action if within sixty (60) days after the **Company** denies coverage or does not admit liability, the **Company** or **Insured**:

1. Brings an action to declare the rights of the parties under the Policy; and

2. Names the individual or person acting for the individual who has submitted a **Claim** against the **Insured**.

### Q. Transfer of Duties When the Limits of Liability Have Been Used Up

1. If the **Company** concludes that, based on an act or omission or **related act or omission**, **claims** which have been reported to the **Company** and to which this policy may apply, limits of liability are likely to be used up in the payment of judgments or settlements, the **Company** will notify the first **Named Insured**, in writing, to that effect.

2. When the limits of liability described in Paragraph 1. above has actually been used up in the payment of judgments or settlements:

   a. The **Company** will notify the first **Named Insured**, in writing, as soon as practicable, that:

      i. Such a limit of liability has actually been used up; and

      ii. The **Company's** duty to defend **claims** seeking **damages** subject to that limit of liability has also ended.

   b. The **Company** will initiate, and cooperate in, the transfer of control, to any appropriate **Insured**, of all **claims** seeking **damages** which are subject to that limit of liability and which are reported to the **Company** before that limit of liability is used up. That **Insured** must cooperate in the transfer of control of said **claims**.

      The **Company** agrees to take such steps, as the **Company** deems appropriate, to avoid a default in, or continue the defense of, such **claims** until such transfer is completed, provided the **Insured** is cooperating in completing such transfer.

      The **Company** will take no action whatsoever with respect to any **claim** seeking **damages** that would have been subject to that limit of liability, had it not been used up, if the **claim** is reported to the **Company** after that limit of liability has been used up.

   c. The first **Named Insured**, and any other **Insured** involved in **a claim** seeking **damages** subject to that limit of liability, must arrange for the defense of such **claims** within such time period as agreed to between the **Insured** and the **Company**. Absent any such agreement, arrangements for the defense of **such claims** must be made as soon as practicable.

3. The first **Named Insured** will reimburse the **Company** for expenses the **Company** incurs in taking those steps the **Company** deems appropriate in accordance with Paragraph 2. b. above. The duty of the first **Named Insured** to reimburse the **Company** will begin on:

   a. The date on which the applicable limit of liability is used up, if the **Company** sent notice in accordance with Paragraph 1. above; or

   b. The date on which the **Company** sent notice in accordance with Paragraph 2. a. above, if the **Company** did not send notice in accordance with Paragraph 1. above.

4. The exhaustion of any limit of liability by the payments of judgments or settlements, and the resulting end of the **Company's** duty to defend, will not be affected by the **Company's** failure to comply with any of the provisions of this Condition.

## VI. EXTENDED REPORTING PERIODS

### A. Automatic Extended Reporting Period

If this policy is cancelled or non-renewed by either the **Company** or by the **Named Insured** or if the **Company** offers any change in coverage less favorable to the **Insured**, including but not

limited to decrease in limits, reduction of coverage, increase in deductible, or new exclusion, the **Company** will provide to the **Insured** an automatic, non-cancelable **extended reporting period** starting at the termination of the **policy period**. This automatic **extended reporting period** will terminate after sixty (60) days. The coverage provided by the policy as a result of the automatic **extended reporting period** shall be excess over other valid and collectible insurance.

**B. Optional Extended Reporting Period**

1. If this policy is cancelled or non-renewed by either the **Company** or by the **Named Insured** or if the **Company** offers any change in coverage less favorable to the **Insured**, including but not limited to decrease in limits, reduction of coverage, increase in deductible or new exclusion, then the **Named Insured** will have the right to purchase an optional **extended reporting period** that would extend the period of time during which **claims** may be reported.

   The additional, non-refundable premium for an optional **extended reporting period** shall be based upon the annual premium rates for such coverage in effect upon the inception or last renewal of this policy and shall be:

   a. Ninety-five percent (95%) of the annual premium for a one (1) year **extended reporting period**;

   b. One hundred eighty-five percent (185%) of the annual premium for a three (3) year **extended reporting period**;

   c. Two hundred twenty-five percent (225%) of the annual premium for a five (5) year **extended reporting period**; or

   d. Two hundred fifty percent (250%) of the annual premium for a seven (7) year **extended reporting period**.

   The first sixty (60) days of the optional **extended reporting period**, if it is purchased, shall run concurrently with the automatic **extended reporting period**.

2. Such right to purchase the optional **extended reporting period** must be exercised by the **Named Insured** by providing written notice to the **Company** accompanied by the amount of addition premium described above within the greater of:

   a. Sixty (60) days of the termination of the **policy period**; or

   b. Within thirty (30) days after the **Company** mails written notice advising of the automatic **extended reporting period** and the availability of, the premium for and the importance of purchasing the optional **extended reporting period**.

   This written notice advising of the automatic **extended reporting period** and the availability of, the premium for and the importance of purchasing the optional **extended reporting period** will be mailed to the **Named Insured**, by the **Company**, within thirty (30) days after termination of coverage.

3. There is no right to any optional **extended reporting period** if the **Named Insured** has been insured by the **Company** for less than (1) year and this policy has been terminated due to nonpayment of premium or fraud.

**C. Retirement Option**

In addition to the automatic **extended reporting period** and optional **extended reporting period** afforded by Subsections A. and B., respectively above, and the **extended reporting period** provided by Subsection G. below, upon retirement from the practice of law, any lawyer who qualifies as an **Insured** shall be entitled to an individual **extended reporting period** with a seven (7) year reporting period for no additional premium, if the lawyer:

1. Is at least fifty-five (55) years old;

   **2.** Was employed by, or a partner, officer, director, or stockholder of the **Named Insured** during the **policy period** and had been insured by the **Company** under the Lawyers Professional Liability Policy continuously for at least three (3) full years;

   **3.** Has permanently and totally ceased the practice of law which includes any **professional services**; and

   **4.** Notifies the **Company** of the retirement and requests an individual **extended reporting period** within sixty (60) days of the cancellation, non-renewal or expiration of this policy.

**D.  Death or Permanent Disability Option**

In addition to the automatic **extended reporting period** and optional **extended reporting period** afforded by Subsections A. and B., respectively above, and the **extended reporting period** provided by Subsection G. below, any lawyer who qualifies as an **Insured** who dies or becomes permanently disabled during the **policy period** shall be entitled to an individual **extended reporting period** with an unlimited reporting period for no additional premium, if:

   **1.** The lawyer was employed by the **Named Insured** during the **policy period** and died or became disabled during the **policy period**;

   **2.** Satisfactory written evidence of death or permanent disability is provided to the **Company**; and

   **3.** The lawyer or lawyer's representative notifies the **Company** of the death or disability and requests issuance of an individual **extended reporting period** within sixty (60) days following the cancellation, non-renewal or expiration of this policy.

**E.  Claims**

Any **extended reporting period** is not a new policy.  Any **claim** submitted during such **extended reporting period** shall be governed by the terms and conditions of this policy.

**F.  Limits of Liability**

The limit of liability for any **extended reporting period** offered under Subsections A., B., C., and D. above shall be part of, and not in addition to, the limits of liability stated in Item 4. of the Declarations, subject only to the following exceptions:

If the **Company** offers to renew this policy and the **Named Insured** refuses to accept such renewal offer, or this Policy is cancelled, then the limit of liability for any **claim** first reported during any **extended reporting period** shall be as follows:

   **1.** If the **Named Insured** has been continuously insured by the **Company** for three (3) or more years when the **extended reporting period** takes effect, then the aggregate limit of liability, if previously depleted, shall be reinstated to the amount stated in Item 4. of the Declarations as the aggregate limit of liability; or

   **2.** If the **Named Insured** has not been continuously insured by the **Company** for three (3) or more years when the **extended reporting period** takes effect, then the aggregate limit of liability shall be the greater of the remaining aggregate limit of liability under the policy or fifty percent (50%) of the amount stated in Item 4. of the Declarations as the aggregate limit of liability.

**G.  Extended Reporting Period For Certain Named Insureds**

   **1.** If the **Named Insured** is a corporation, partnership or other entity, any **Insured** covered under this policy may purchase a one (1), three (3), five (5), or seven (7) year **extended reporting period** if:

      **a.** Such entity has been placed in liquidation, bankruptcy or permanently ceases operations;

      **b.** The entity or its designated trustee does not purchase **extended reporting period** coverage; and

    **c.** Such **Insured** requests the **extended reporting period** within one hundred twenty (120) days of the termination of coverage.

This endorsement, effective 12:01 A.M., 05/20/2022 forms a part of Policy No. LPP003671-04
Issued to: The Law Office of David P. Marcus, PLLC By: Aspen American Insurance Company

# OFAC ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## LAWYERS PROFESSIONAL LIABILITY POLICY

In consideration of the premium charged, it is agreed that any payment under this policy shall only be made in full compliance with all U.S.A. economic or trade sanctions or other laws or regulations, including sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

Nothing contained herein shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements, or Declarations of the policy, other than as herein stated.

All other provisions of this policy remain unchanged.

# NEW YORK POLICYHOLDER DISCLOSURE

THIS POLICY IS WRITTEN ON A CLAIMS MADE BASIS AND PROVIDES NO COVERAGE FOR CLAIMS ARISING OUT OF INCIDENTS, OCCURRENCES OR ALLEGED WRONGFUL ACTS WHICH TOOK PLACE PRIOR TO THE RETROACTIVE DATE, IF ANY, STATED IN THE POLICY.

THIS POLICY COVERS ONLY CLAIMS ACTUALLY MADE AGAINST AN INSURED UNDER THE POLICY WHILE THE POLICY REMAINS IN EFFECT OR WHILE THE AUTOMATIC EXTENDED REPORTING PERIOD OR ANY ADDITIONAL EXTENDED REPORTING PERIOD THE INSURED MAY PURCHASE, IS IN EFFECT. ALL OTHER COVERAGE UNDER THIS POLICY CEASES UPON THE TERMINATION OF THE POLICY.

DURING THE FIRST SEVERAL YEARS OF THE CLAIMS MADE RELATIONSHIP, CLAIMS MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES. SUBSTANTIAL ANNUAL PREMIUM INCREASES CAN BE EXPECTED, INDEPENDENT OF OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS MADE RELATIONSHIP REACHES MATURITY.

UPON TERMINATION OF COVERAGE FOR ANY REASON, A SIXTY (60) DAY AUTOMATIC EXTENDED REPORTING PERIOD WILL BE GRANTED AT NO ADDITIONAL CHARGE. THE INSURED WILL BE ABLE TO PURCHASE ADDITIONAL EXTENDED REPORTING PERIOD COVERAGE OF UP TO SEVEN (7) YEARS, INCLUSIVE OF THE SIXTY (60) DAY PERIOD SPECIFIED ABOVE, UNLESS DURING THE FIRST YEAR OF COVERAGE THIS POLICY IS TERMINATED FOR NON-PAYMENT OF PREMIUM OR FRAUD.

WITHIN THIRTY (30) DAYS AFTER TERMINATION OF COVERAGE, THE COMPANY WILL GIVE WRITTEN NOTIFICATION TO THE INSURED THAT THE AUTOMATIC EXTENDED REPORTING PERIOD APPLIES, WHICH NOTICE WILL STATE THE IMPORTANCE OF PURCHASING AN ADDITIONAL EXTENDED REPORTING PERIOD AND THE PREMIUM FOR SUCH ADDITIONAL COVERAGE. NO SUCH NOTICE WILL BE SENT IF THIS POLICY HAS BEEN IN EFFECT FOR ONE YEAR OR MORE AND HAS BEEN TERMINATED FOR NON-PAYMENT OF PREMIUM OR FRAUD.

THERE IS A POTENTIAL FOR COVERAGE GAPS THAT MAY ARISE UPON EXPIRATION OF ANY EXTENDED REPORTING PERIOD IF PRIOR ACTS COVERAGE IS NOT SUBSEQUENTLY PROVIDED BY ANOTHER INSURER.

THE INSURED SHALL HAVE THE GREATER OF SIXTY (60) DAYS FROM THE EFFECTIVE DATE OF TERMINATION OF COVERAGE OR THIRTY (30) DAYS FROM THE DATE OF MAILING OR DELIVERY OF THE NOTICE MENTIONED ABOVE TO SUBMIT WRITTEN ACCEPTANCE OF THE EXTENDED REPORTING PERIOD.

This endorsement, effective 12:01 A.M., 05/20/2022 forms a part of Policy No. LPP003671-04
Issued to: The Law Office of David P. Marcus, PLLC By: Aspen American Insurance Company

# NEW YORK - CLAIM EXPENSES OUTSIDE THE LIMIT OF LIABILITY ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**LAWYERS PROFESSIONAL LIABILITY POLICY**

In consideration of the premium charged, it is hereby agreed that:

1.  Item **4.** in the Declarations is deleted in its entirety and replaced as follows:

    **4.   LIMITS OF LIABILITY**:

    **A.**  $2,000,000      Limit of Liablility - Each **Claim**

    **B.**  $2,000,000      Limit of Liablility - Policy Aggregate

2.  Section **I. INSURING AGREEMENTS**, Subsection **A. Coverage** is amended by the addition of the following:

    **3.   Claim expenses** are in addition to and do not reduce the limit of liability.

3.  Section **I. INSURING AGREEMENTS**, Subsections **C.** and **D.** are deleted in their entirety and replaced as follows:

    **C.  Settlement**

    The **Company** will have the right to make, with the consent of the **Named Insured**, any settlement of a **claim** under this policy. If the **Named Insured** refuses to consent to a settlement within the policy's applicable **damages** limit of liability that is recommended by the **Company** and acceptable to the claimant, then the **Company's damages** limit of liability under this policy will be reduced to the amount of **damages** for which the **claim** could have been settled.

    **D.  Exhaustion of Limits**

    The **Company** is not obligated to pay any **damages** or **claim expenses** or to defend or continue to defend any **claim** after the applicable limit of liability has been exhausted.  The **Company** will cooperate in the transfer of control of the defense of any **claim** to the **Named Insured** which were reported to the **Company** prior to the exhaustion of such limit.   The **Named Insured** must cooperate in the transfer of control of the defense of such **claims**.  The **Named Insured** must reimburse the **Company** for expenses it incurs in taking those steps the **Company** deems appropriate to avoid a default in such **claims** until such transfer has been completed.

4.  Section **II. LIMITS OF LIABILITY AND DEDUCTIBLE**, Subsections **A.** and **B.** are deleted in their entirety and replaced as follows:

   **A.  Limit of Liability - Each Claim**

   Subject to Section **II.B.** below, the **Company's** limit of liability for **damages** for each **claim** first made against the **Insured** during the **policy period** shall not exceed the amount shown in Item 4.A. of the Declarations for "Each **Claim**."

   **B.  Limit of Liability - Policy Aggregate**

   The **Company's** limit of liability for **damages** for all **claims** first made against the **Insured** during the **policy period** shall not exceed the aggregate amount shown in Item 4.B. of the Declarations as the "Policy Aggregate."

5.  Section **VI. EXTENDED REPORTING PERIODS**, Subsection **F.** is deleted in its entirety and replaced as follows:

   **F.  Limits of Liability**

   1.  The **Company's** limit of liability for all **claims** reported during the automatic **extended reporting period** will be part of and not in addition to the limit of liability for the **policy period** set forth in Item 4. of the Declarations.

   2.  The **Company's** limit of liability for all **claims** reported during an optional **extended reporting period** shall be:

      a.  At least equal to one hundred percent (100%) of the policy's annual aggregate limit of liability where **the Named Ins**ured has been continuously insured by the **Company** for three (3) years or more; or

      b.  If the **Named Insured** has been continuously insured by the **Company** for less than three (3) years, the limit of liability shall be at least equal to the greater of:

         i.   the amount of coverage remaining in policy's annual aggregate limit of liability; or

         ii.  fifty percent (50%) of such policy's annual aggregate limit of liability.

All other provisions of this policy remain unchanged.



## LAWYER'S PROTECTOR PLAN® PURCHASING GROUP
## ACKNOWLEDGMENT FORM

Re: The Law Office of David P. Marcus, PLLC - LPP003671-04

This form acknowledges that the law firm noted above has paid its purchasing group membership dues of $150.00.

As such, the law firm noted above is entitled to all of the membership benefits afforded to members of the Lawyer's Protector Plan Purchasing Group during the policy period beginning 05/20/2022, which includes at **no additional cost:**

**Online Continuing Legal Education (CLE):** Up to 5 hours of free CLE for each lawyer in the law firm through Hinshaw & Culbertson's LawyeringLaw.com. You can access the CLE courses by following these instructions:
1. To Create a New Profile:
   a. Go to: www.lawyeringlaw.com
   b. Click the "Create New Profile" button (policy number required)
   c. Complete the form, click the "Submit" button
   d. You will receive an email confirming your registration
2. To Access the CLE's:
   a. Go to: https://www.lawyeringlaw.com
   b. Click on the "Subscription Content" tab at the top of the page
   c. Click on the red "Ethics CLEs" button on the top right of the page
   d. Follow the directions on that page.


**Additional CLE Benefits:** In addition to the free CLE credits available from LawyeringLaw.com, Lawyer's Protector Plan also offers CLE credits targeted to specific areas of practice at a 30% discount through Lorman Education Services. To take advantage of this great discount, follow the instructions below:
1. Call Lorman today @ 715.833.7555 ext. 1210 or register online at   http://www.lorman.com/training/lawyersprotectorplan
2. Use Priority Code 16379 and Discount Code N2585941

**Risk Management Consultation:** Up to 4 hours per lawyer of confidential consultation with nationally recognized legal malpractice counsel through Hinshaw & Culbertson. The insurance company is never notified that your firm has requested a risk management consultation.
1. Toll-Free Hotline: Call 1.866.561.2110, available 9 a.m. to 7 p.m. EST
2. Online: Fill out the Risk Management Consultation Agreement to have a senior risk management attorney contact you within 24 hours. To request a risk management consultation:
   a. Go to: www.lawyeringlaw.com
   b. Click on the "Subscription Content" tab at the top of the page
   c. Click on the red "Request a Risk Management Consultation" button on the top right of the page
   d. Read the Risk Management Consultation Program and Engagement Agreement, click "Agree & Proceed" at the bottom
   e. Complete the Risk Management Consultation Agreement form, click the "Submit" button
   f. Once you submit your Agreement, the conflicts-check process will begin
   g. Expect a call from a Hinshaw attorney within 24 hours of submitting your agreement

**LawyeringLaw.com Website:** Access to the most comprehensive risk management website available for law firms, where members can download:
• Samples of engagement letters
• Checklists for screening new clients
• Help in determining whether to sue a client for fees
• Self-audit forms

**Newsletters:** Newsletter sign up for monthly updates on professional liability issues, legal malpractice case law, and enterprise cyber security risk management issues

**Applicable in Texas ONLY: The insurer for the purchasing group may not be covered by an insurance insolvency guaranty fund or similar mechanism and the insurer of the group is not subject to all the insurance laws and regulations of this state.**

***Membership benefits are subject to change and availability of programs may vary throughout the membership year.**

**Lawyer's Protector Plan® and LPP® are registered service marks of B&B Protector Plans, Inc., a subsidiary of Brown & Brown, Inc. Brown & Brown, Inc. and its subsidiaries are not affiliated with or responsible for the acts, errors or omissions of Hinshaw & Culbertson LLP.**

LPGPI (01 22)

This endorsement, effective 12:01 A.M., 05/20/2022 forms a part of Policy No. LPP003671-04
Issued to: The Law Office of David P. Marcus, PLLC By: Aspen American Insurance Company

# NEW YORK - FIRST DOLLAR DEFENSE ENDORSEMENT – EACH CLAIM

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## LAWYERS PROFESSIONAL LIABILITY POLICY

In consideration of an additional premium paid, it is understood and agreed that Item 5. of the Declarations is deleted in its entirety and replaced as follows:

     **5.** **DEDUCTIBLE** (Exclusive of **claim expenses**): $20,000  Each **Claim**

It is further agreed that Section **II. LIMITS OF LIABILITY AND DEDUCTIBLE**, Subsection **C. Deductible**, Paragraph **1.** is deleted in its entirety and replaced as follows:

    **C.**      **Deductible**

        **1.** The deductible amount shown in Item 5. of the Declarations is the **Insured's** obligation for each **claim** first made against the **Insured** during the **policy period** or **the extended reporting period** and applies to the payment of **damages**.  The deductible will be paid by the **Named Insured** within thirty (30) days of the **Company's** demand for payment.  The limits of liability set forth in the Declarations are in addition to, and in excess of, the deductible.

All other provisions of this policy remain unchanged.

This endorsement, effective 12:01 A.M., 05/20/2022 forms a part of Policy No. LPP003671-04
Issued to: The Law Office of David P. Marcus, PLLC By: Aspen American Insurance Company

## PREDECESSOR FIRM ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**LAWYERS PROFESSIONAL LIABILITY POLICY**

In consideration of the premium charged, it is agreed that Section **III. DEFINITIONS**, Subsection **M. Predecessor Firm** is amended to include the following list of firm(s):

**M.    Predecessor Firm(s):**

Marcus & Cinelli, LLP

All other provisions of this policy remain unchanged.