UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARCUS & CINELLI, LLP,

                    Plaintiff,             **REPORT AND RECOMMENDATION**

v.

                                              Case No. 1:23-cv-1037-JLS-JJM

ASPEN AMERICAN INSURANCE
COMPANY,

                    Defendants.
_____

        In this diversity action, plaintiff Marcus & Cinelli, LLP ("M&C"), a law firm, seeks a declaration ordering its professional liability insurance carrier, defendant Aspen American Insurance Company ("Aspen"), to defend and indemnify it in an action filed against it and others in State of New York Supreme Court, County of New York by the law firm of Patterson Belknap Webb & Tyler ("Patterson"). Complaint [1].[1]

        Before the court are Aspen's motion [11] pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) seeking dismissal of M&C's Complaint for failure to state a claim, and M&C's motion [20] pursuant to Rule 56(a) for partial summary judgment declaring that Aspen is obligated to defend it in the Patterson action, together with other forms of relief. Both motions have been referred to me by District Judge John L. Sinatra, Jr. for initial consideration [13].

        At the conclusion of oral argument on March 4, 2024 [32], my preliminary reaction was that Aspen would be obligated to defendant M&C in the Patterson action. However, having again reviewed the parties' submissions [11, 19, 20, 22, 23, 29, 34, 35], I have

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

reconsidered my initial view. For the following reasons, I recommend that Aspen's motion be granted, and that M&C's motion be denied.

## DISCUSSION

A.  **Aspen's Motion to Dismiss**

M&C initially argues that "Aspen's motion is not properly brought pursuant to Rule 12(b)(6)" because it "relies on evidence outside of the pleadings in this action". M&C's Memorandum of Law [19] at 6, n. 1. I disagree. Aspen relies upon Patterson's Amended Complaint [11-3] and Aspen's liability insurance policy [11-4], both of which are specifically mentioned in M&C's Complaint ([1], ¶¶6-12, 18-20 *et seq*.). Since "a complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference", the court "may consider documents incorporated in a complaint by reference on a motion pursuant to [Rule] 12(b)(6) without converting it to a motion for summary judgment". Elite Union Installations, LLC v. National Fire Insurance Co. of Hartford, 559 F. Supp. 3d 211, 218 (S.D.N.Y. 2021).

**Patterson's Amended Complaint**

Although M&C occasionally refers to Patterson's "complaint", it admits that "the operative Patterson complaint is the amended complaint submitted by Aspen". M&C's Memorandum of Law [19] at 7, n. 4. That pleading [11-3] alleges that Patterson holds a judgment in the amount of $2,056,160.14 (plus interest) against M&C's client, Barbara Stewart, and that M&C, with knowledge of that judgment and of a restraining notice issued against Ms. Stewart, wrongfully transferred proceeds from the sale of her diamond ring to itself and others, leaving Patterson's judgment unsatisfied. It seeks damages for M&C's alleged violations of N.Y. Debtor and Creditor Law ["DCL"] §§273, 274 and 275 (First Cause of Action); §273-a (Second

Cause of Action); and §276 (Third Cause of Action). In addition, it seeks an order holding M&C in civil contempt for facilitating Ms. Stewart's violation of the restraining notice (Fifth Cause of Action).[2]

**The Aspen Policy**

The policy's "Insuring Agreement" states that Aspen "will pay on behalf of the Insured all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages and claim expenses as a result of a claim . . . by reason of an act or omission, including personal injury, in the performance of professional services by the Insured", defining "professional services" to mean "services performed by the Insured . . . [f]or a client in the Insured's capacity as a lawyer". [11-4] at 5, 10. Aspen argues that the Patterson action is merely a fee dispute which does not involve the rendition of professional services. Aspen's Memorandum of Law [11-14], Point I. For the reasons argued by M&C (M&C's Memorandum of Law [19] at 25-29), Patterson's allegations involve the rendition of professional services by attorneys.

In addition, however, Aspen relies upon Exclusion IV(I) of its policy, which states that Aspen "will not defend or pay any claim . . . [b]ased upon or arising out of the . . . misappropriation of or failure to give an account of any asset in the Insured's care custody or control". Aspen's Memorandum of Law [11-14], Point III; [11-4] at 10-11. "Under New York law, in the context of a policy exclusion, the phrase 'arising out of' is unambiguous, and is interpreted broadly to mean "originating from, incident to, or having connection with."'" First Mercury Insurance Co. v. Schwartz, 2019 WL 2053850, *12 (E.D.N.Y.), adopted as modified,

---

[2]   Paterson's Fourth Cause of Action has already been dismissed. See M&C's Memorandum of Law [19] at 7, n. 4; [11-12] at 8, 9.

-3-

2019 WL 6606115 (E.D.N.Y. 2019); Scottsdale Indemnity Co. v. Beckerman, 120 A.D.3d 1215, 1219 (2d Dept. 2014).[3]

Although the policy does not define "misappropriation", M&C defines it to mean "any unauthorized use of client's funds entrusted to an attorney . . . whether or not he derives any personal gain or benefit therefrom". M&C's Memorandum of Law [19] at 20, *quoting* Black's Law Dictionary (6th ed.). *See also* Johnson v. JPMorgan Chase Bank, N.A., 488 F. Supp. 3d 144, 159 (S.D.N.Y. 2020) ("misappropriation . . . has been broadly described as encompassing any form of commercial immorality"); Black's Law Dictionary (11th ed. 2019) ("[t]he doctrine of 'misappropriation' . . . has been applied to a variety of situations in which the courts have sensed that one party was dealing unfairly with another"); Oxford English Dictionary (www.oed.com) (defining misappropriation as "[a]ppropriation of (something) for a wrong use").

M&C admits that Aspen's "duty to defend is determined by the four corners of the Patterson complaint" (M&C's Reply Memorandum of Law [29] at 7), and that Patterson's "allegations must be taken on their face". M&C's Letter Brief [35] at 2. M&C acknowledges that Patterson's Amended Complaint "attempts to paint a picture of M&C as a culprit". M&C's Memorandum of Law [19] at 13. More specifically, Patterson alleges that it obtained a judgment against Stewart on July 22, 2013 ([11-3], ¶11); that on August 5, 2013 it served Stewart with a Restraining Notice pursuant to N.Y.C.P.L.R. §5222(b), which forbade her from transferring her property, except upon direction of the sheriff or pursuant to court order, until the judgment was

---

[3] "Jurisdiction in this case is premised on diversity, and the parties both present arguments based on New York law, the law of the forum state. It is therefore appropriate for this Court to apply New York law." Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 121, n. 5 (2d Cir. 1998).

satisfied (id., ¶¶12, 123);⁴ that M&C had actual notice of Patterson's judgment and the Restraining Notice since at least May 9, 2014 (id., ¶27); that Stewart violated the Restraining Notice by selling her diamond ring (id., ¶124); and that M&C, being aware of the Restraining Notice, deliberately and knowingly facilitated Stewart's violation of that Notice by facilitating the sale of the ring and transferring the sale proceeds (id., ¶125). M&C concedes that Patterson's DCL claims are based on M&C's "alleged involvement with Stewart's alleged fraudulent conveyance". M&C's Memorandum of Law [19] at 20.

    M&C argues that "[t]he Patterson complaint does not allege [that] M&C misappropriated the sale proceeds from Stewart . . . . In fact, the complaint alleges M&C handled the proceeds exactly as Stewart intended". Id. However, crediting Patterson's allegations (as I must for purposes of this motion), M&C's handling of the sale proceeds was still unauthorized, because Stewart, being herself subject to the Restraining Notice, could not authorize M&C to violate that Notice on her behalf. A "restraining notice serves as a type of injunction prohibiting the transfer of the judgment debtor's property", Aspen Industries, Inc. v. Marine Midland Bank, 52 N.Y.2d 575, 579 (1981), and "nonparties may be bound by an injunction if they have knowledge of it, provided they are servants or agents of the defendants, or act in collusion or combination with them". Ricatto v. Ricatto, 4 A.D.3d 514, 516 (2d Dept. 2004), *quoting* Rigas v. Livingston, 178 N.Y. 20, 24 (1904).⁵

---

⁴ Although M&C claims that "a restraining notice is of no effect against a served party after one year following service" (M&C's Memorandum of Law [19] at 38), §5222(b) makes clear that the one-year limitation does not apply to the judgment debtor.

⁵ *See also* In re Wimbledon Financing Master Fund, Ltd. v. Bergstein, 173 A.D.3d 401, 401-02 (1st Dept. 2019) ("Katzman was sufficiently aware of the restraining notices to be held, along with his firm, in civil contempt for wilful neglect of the notices . . . . Katzman admitted that he received and reviewed copies of the notices, which were emailed to him").

Although "[t]he duty to defend arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy", that duty "is not triggered . . . when the only interpretation of the allegations against the insured is that the factual predicate for the claim falls wholly within a policy exclusion." Scottsdale Indemnity Co., 120 A.D.3d at 1218. Thus, "if the plaintiff in an underlying action or proceeding alleges the existence of facts clearly falling within such an exclusion, and none of the causes of action that he or she asserts could exist but for the existence of the excluded activity or state of affairs, the insurer is under no obligation to defend the action." Id. at 1219. Moreover, the court "should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the [underlying] complaint that is linguistically conceivable but tortured and unreasonable". Northville Industries Corp. v. National Union Fire Insurance Co. of Pittsburgh, 89 N.Y.2d 621, 634-35 (1997).

A reasonable reading of Patterson's Amended Complaint leads me to conclude that each of its claims against M&C require a determination that M&C engaged in misappropriation with the meaning of Exclusion IV(I) of Aspen's policy. Therefore, M&C has not plausibly alleged that Aspen is obligated to defend it in the Patterson action. And since the duty to defend is broader than the duty to indemnify, nor has M&C plausibly alleged its entitlement to indemnification. *See* Aspen's Memorandum of Law [11-14], Point V.

**B.      Leave to Replead**

Although courts sometimes offer the opportunity to replead when granting a Rule 12(b)(6) motion, they "may dismiss a claim without leave to amend when amendment would be futile . . . . Stated another way, an opportunity to amend is not required where the problem with plaintiff's causes of action is substantive such that better pleading will not cure it". Strong v.

Watson, 2023 WL 8439445, at *16 (W.D.N.Y.), adopted, 2023 WL 7647780 (W.D.N.Y. 2023). Since I perceive no basis on which M&C could properly allege that the allegations of Patterson's Amended Complaint are covered by the Aspen policy, I recommend that leave to replead (which M&C has not requested in any event) be denied.

### C.     M&C's Motion for Partial Summary Judgment

For the same reasons that M&C cannot properly *allege* its entitlement to coverage under the Aspen policy, it likewise cannot *prove* that entitlement. Therefore, its motion for partial summary judgment should be denied.

### CONCLUSION

For these reasons, I recommend that Aspen American's motion to dismiss [11] be granted, without leave to replead, and that M&C's motion for partial summary judgment [20] be denied. Unless otherwise ordered by District Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by May 24, 2024. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: May 10, 2024

                                                            JEREMIAH J. MCCARTHY
                                                            United States Magistrate Judge